IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No. 1:19-CR-304 (LMB) |
| | ) | |
| v. | ) | COUNT ONE: 18 U.S.C. § 793(d) |
| | ) | Willful Transmission of |
| HENRY KYLE FRESE | ) | National Defense Information |
| | ) | |
| Defendant. | ) | COUNT TWO: 18 U.S.C. § 793(d) |
| | ) | Willful Transmission of |
| | ) | National Defense Information |

**UNDER SEAL**

INDICTMENT

OCTOBER 2019 TERM -- At Alexandria

**THE GRAND JURY CHARGES THAT:**

At all times material to this Indictment, except as otherwise indicated:

**General Allegations**

**The Defendant**

1. Defendant **Henry Kyle Frese** (**"FRESE"**) resided in the Eastern District of Virginia.

2. **FRESE** was an employee of the Defense Intelligence Agency ("DIA"), located in the Eastern District of Virginia.

**Classified Information**

3. Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information was classified as "TOP SECRET," "SECRET," or

"CONFIDENTIAL." National security information was information owned by, produced by, produced for, and under the control of the United States government that was classified as follows:

    a.    Information was classified as TOP SECRET if the unauthorized disclosure of that information reasonably could be expected to cause exceptionally grave damage to the national security that the original classification authority was able to identify and describe.

    b.    Information was classified as SECRET if the unauthorized disclosure of that information reasonably could be expected to cause serious damage to the national security that the original classification authority was able to identify and describe.

    c.    Information was classified as CONFIDENTIAL if the unauthorized disclosure of that information reasonably could be expected to cause damage to the national security that the original classification authority was able to identify and describe.

4. Access to national security information classified at any level could be further restricted through compartmentation in Sensitive Compartmented Information ("SCI") categories. Only individuals with the appropriate security clearance and additional SCI permissions could have authorized access to such classified national security information.

5. Classified information, including SCI, was marked according to its classification and applicable SCI compartments, following standard formats for different types of media, including headers and footers stating the highest classification level and SCI compartments of information a document contained and individual classifications markings for each paragraph.

6. Information classified at any level could only be lawfully accessed by persons determined by an appropriate United States government official to be eligible for access to classified information, who had signed an approved non-disclosure agreement, who received a security clearance, and who had a "need to know" the classified information. Classified information could only be stored in an approved facility and container.

### FRESE's Access to Classified National Defense Information

7. From in or about January 2017 until in or about February 2018, **FRESE** was a contract employee with DIA, assigned to a facility in the Eastern District of Virginia, and held a Top Secret//Sensitive Compartmented Information ("TS//SCI") clearance.

8. From in or about February 2018 through in or about October 2019, **FRESE** was employed by DIA, assigned to a facility in the Eastern District of Virginia. In connection with his employment, **FRESE** held a TOP SECRET//SCI security clearance.

9. **FRESE** received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. **FRESE** received training on his duty to protect classified materials from unauthorized disclosure, which included complying with handling, transportation, and storage requirements. **FRESE** knew that unauthorized transmission of classified National Defense Information ("NDI") could endanger the national security of the United States and the safety of its citizens. In particular, **FRESE** had been advised that (a) unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States; (b) unauthorized disclosure of SECRET information reasonably could be expected to cause serious damage to the national security of the United States; and (c) that violation of rules governing the handling of classified information could result in criminal prosecution.

### FRESE's Transmission of National Defense Information

10. Because **FRESE** held a security clearance and was assigned first as a contractor to and then an employee of DIA, the United States government entrusted **FRESE** with access to sensitive government materials, including information relating to the national defense that was closely held by the government ("National Defense Information" or "NDI") and classified documents and materials.

3

11. In or about mid-April to early May 2018, **FRESE** accessed an intelligence report unrelated to his job duties on multiple occasions, which contained NDI classified at the TOP SECRET//SCI level, which related to a certain foreign country's weapons systems ("Intelligence Report 1").

12. A week after **FRESE** accessed Intelligence Report 1 for the second time, **FRESE** received an April 27, 2018 Twitter Direct Message ("DM") from a journalist ("Journalist 1") with a certain news outlet ("News Outlet 1"). Journalist 1 asked whether **FRESE** would be willing to speak with a second journalist ("Journalist 2"), who worked with a second news outlet ("News Outlet 2"). **FRESE** stated that he was "down" to help Journalist 2 if it helped Journalist 1 because he wanted to see Journalist 1 "progress."

13. During the same April 27, 2018 Twitter exchange, Journalist 1 also indicated that a certain United States military official told Journalist 2 that the official was not aware of the stated subject matter of a story Journalist 1 was working on, the subject matter being the topic of Intelligence Report 1. **FRESE** characterized the official's denial as "weird" and commented on the source of information contained within Intelligence Report 1.

14. Several days after the April 27 Twitter exchange, **FRESE** searched on a classified United States government computer system for terms related to the topics contained in Intelligence Report 1.

15. A few hours after searching for terms related to the topic of Intelligence Report 1, **FRESE** spoke by telephone with Journalist 1 for seven minutes. Several hours later, **FRESE** spoke by telephone with Journalist 2 for over half an hour. Immediately after the call with Journalist 2, Journalist 1 called **FRESE**. Approximately half an hour after **FRESE** spoke with the two journalists, Journalist 1 published an article ("Article 1") through News Outlet 1, which contained NDI from Intelligence Report 1 classified at the TOP SECRET//SCI level.

16.  Journalist 1 later Tweeted a link to Article 1. **FRESE** subsequently re-Tweeted Journalist 1's Tweet of Article 1.

17.  Pursuant to court-authorized Title III interception of wire and electronic communications to and from **FRESE's** cellular telephone, the Federal Bureau of Investigation ("FBI") intercepted certain portions of **FRESE's** text messages and telephone calls.

18.  On September 11, 2019, the FBI intercepted a call between **FRESE** and Journalist 1 during which Journalist 1 discussed Journalist 2 and Journalist 2's assignments at work. Journalist 1 asked FRESE if he wanted "to meet [Journalist 2], actually have you met her in person[?]" **FRESE** replied, "I haven't, yeah that sounds good."

19.  On or about September 24, 2019, **FRESE** accessed two additional intelligence reports ("Intelligence Report 2," and "Intelligence Report 3," collectively with Intelligence Report 1 referred to as the "intelligence reporting"), both classified at the SECRET level.

20.  On September 24, 2019, after **FRESE** had accessed Intelligence Report 2 and Intelligence Report 3, the FBI intercepted a text message from FRESE to Journalist 2 asking Journalist 2 to call FRESE. Approximately one minute later, the FBI intercepted a call made to FRESE from Journalist 2 in which **FRESE** unlawfully transmitted certain NDI, classified at the SECRET level, from Intelligence Report 2 and Intelligence Report 3 to Journalist 2. During the September 24, 2019 call, Journalist 2 asked **FRESE** "what's going on at work?" **FRESE** responded, "Uh, well it's nothing to do with, like what I cover, per usual but um, it's, so it's about, [topic of Intelligence Reports 2 and 3] . . . . And I don't know if anyone's really commented on this but I saw a report, it's a few days old at this point, um, that basically [NDI from Intelligence Reports 2 and 3 that was classified at the SECRET level]."

21.  The intelligence reporting that **FRESE** viewed, and the content of which he transmitted, bore standard markings indicating that it contained highly classified information of

the United States, including information at the SECRET and TOP SECRET levels, as well as SCI. With respect to this information:

    a. **FRESE** knew that the intelligence reporting contained classified information that related to the national defense.

    b. **FRESE** was never authorized to transmit the intelligence reporting.

    c. **FRESE** knew that he was not authorized to transmit the intelligence reporting.

    d. The News Outlets to which **FRESE** transmitted the intelligence reporting were not entitled to receive or possess it.

    e. **FRESE** knew that the News Outlets were not entitled to receive or possess the intelligence reporting.

## COUNT ONE
## 18 U.S.C. § 793(d)
### (Willful Transmission of National Defense Information)

22. Paragraphs 1-16 and 21 of this Indictment are incorporated by reference and realleged as if set forth fully herein.

23. Beginning on or about April 12, 2018, and continuing until on or about a date unknown but no later than May 3, 2018, in the Eastern District of Virginia, and elsewhere, the defendant,

**HENRY KYLE FRESE,**

lawfully having possession of, access to, and control over a document containing information relating to the national defense, willfully transmitted information to a person not entitled to receive it, with reason to believe such information could be used to the injury of the United States and to the advantage of any foreign nation: to wit, **FRESE** transmitted TOP SECRET information from Intelligence Report 1 to Journalist 1.

All in violation of 18 U.S.C. § 793(d).

## COUNT TWO
## 18 U.S.C. § 793(d)
### (Willful Transmission of National Defense Information)

24. Paragraphs 1-21 of this Indictment are incorporated by reference and realleged as if set forth fully herein.

25. On or about September 24, 2019, in the Eastern District of Virginia, and elsewhere, the defendant,

**HENRY KYLE FRESE,**

lawfully having possession of, access to, and control over a document containing information relating to the national defense, willfully transmitted information to a person not entitled to receive it, with reason to believe such information could be used to the injury of the United States and to the advantage of any foreign nation: to wit, **FRESE** transmitted SECRET information from Intelligence Report 2 and Intelligence Report 3 to Journalist 2.

All in violation of 18 U.S.C. § 793(d).

A TRUE BILL:

Pursuant to the E-Government Act,, The original of this page has been filed under seal in the Clerk's Office

_____
FOREPERSON OF THE GRAND JURY

G. Zachary Terwilliger
United States Attorney

By: _____
Danya E. Atiyeh
Assistant United States Attorney

_____
Jennifer Kennedy Gellie
Trial Attorney
National Security Division
United States Department of Justice

8