IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 1:19-cr-304 |
| | ) | (Hon. Leonie M. Brinkema) |
| HENRY KYLE FRESE, | ) | |
| | ) | |
| Defendant. | ) | |

<u>STATEMENT OF FACTS</u>

The United States and the defendant, HENRY KYLE FRESE (hereinafter, "the defendant"), agree that at trial, the United States would have proven the following facts beyond a reasonable doubt with admissible and credible evidence:

1.      From in or about April 2018 to in or about September 2019, in the Eastern District of Virginia and elsewhere, the defendant, lawfully having possession of, access to, and control over information relating to the national defense, willfully transmitted SECRET and TOP SECRET information to persons not entitled to receive it, with reason to believe such information could be used to the injury of the United States and to the advantage of any foreign nation.

2.      From in or about February 2018 until in or about October 2019, the defendant was employed as a counterterrorism ("CT") analyst at the Defense Intelligence Agency ("DIA") in the Eastern District of Virginia.   Prior to that employment, the defendant worked as a contractor at DIA from in or about January 2017 until in or about February 2018.   In both positions, the defendant held a Top Secret//Sensitive Compartmented Information ("TS//SCI") U.S. government security clearance.

3.     Pursuant to Executive Order 12958 signed on April 17, 1995, as amended by Executive Order 13292 on March 25, 2003, and Executive Order 13526 on December 29, 2009, national security information classified as "TOP SECRET" was information owned by, produced by, produced for, and under the control of the United States government, the unauthorized disclosure of which reasonably could be expected to cause exceptionally grave damage to the national security of the United States.   National security information classified as "SECRET" was information owned by, produced by, produced for, and under the control of the United States government, the unauthorized disclosure of which reasonably could be expected to cause serious damage to the national security of the United States.

4.     Information classified at any level could only be lawfully accessed by persons determined by an appropriate United States government official to be eligible for access to classified information, who received a security clearance, who had signed an approved non-disclosure agreement, and who had a "need to know" the classified information.   Classified information could only be stored in an approved facility or container, or on an approved computer network.

5.     Classified national security information could be further protected through SCI compartments in order to protect particularly sensitive intelligence sources and methods.   Authorized access to SCI required an appropriate security clearance, non-disclosure agreement, need to know, and additional SCI permissions.   Storage of SCI was only authorized within an approved Sensitive Compartmented Information Facility ("SCIF").

6.     The defendant received training regarding classified information, including the definitions of classified information, the levels of classification, and SCI, as well as the proper handling, marking, transportation, and storage of classified materials. The defendant received training on his duty to protect classified materials from unauthorized disclosure.   In particular, the defendant knew that unauthorized disclosure of TOP SECRET information reasonably could be expected to cause exceptionally grave damage to the national security of the United States.   The defendant further knew that unauthorized disclosure of SECRET information reasonably could be expected to cause serious damage to the national security of the United States.   The defendant also knew that classified information within an SCI compartment required even greater protection than other information classified at the same level.   The defendant likewise knew that violation of the rules governing the handling of classified information could result in criminal prosecution.

7.     Because the defendant held a security clearance and was assigned as a contractor and, later, an employee at the DIA, the United States government entrusted the defendant with access to sensitive government materials, including information relating to the national defense that was closely held by the government and the disclosure of which would potentially be damaging to the United States or useful to an enemy of the United States ("National Defense Information" or "NDI"), including classified documents and materials.

8.     U.S. government agencies have confirmed that in the spring and summer of 2018, News Outlet 1 published eight articles, all authored by the same journalist ("Journalist 1") that contained classified NDI that related to the capabilities of certain

3

foreign countries' weapons systems.   These articles contained classified intelligence

from five intelligence reports (the "Compromised Intelligence Reports") made available

to appropriately cleared recipients in the first half of 2018.   The topic of all of these

initial five Compromised Intelligence Reports – foreign countries' weapons systems –

was outside the scope of the defendant's job duties as an analyst covering CT topics.

The media articles, and the intelligence reporting from which they were derived, both

contained information that is classified up to the TS//SCI level, indicating that its

unauthorized disclosure could reasonably be expected to result in exceptionally grave

damage to the national security.   The intelligence reporting was marked as such.

9.     U.S. government information technology system audit logs showed that

only 26 individuals, including the defendant, accessed all five Compromised Intelligence

Reports.

10.     From in or about January 2018 to in or about November 2018, the

defendant and Journalist 1 lived together at the same residential address.

11.     Throughout 2018 and 2019, the defendant and Journalist 1 "followed"

each other on Twitter, meaning they could see each other's Tweets.   On at least two

occasions, the defendant re-Tweeted Journalist 1's Tweets announcing the publications of

articles containing NDI classified at the TOP SECRET level.

12.     In or about April of 2018, Journalist 1 introduced the defendant to a

second journalist (Journalist 2).   Subsequently, the defendant began texting and speaking

with Journalist 2 by telephone.

13.     Between mid-2018 and late September 2019, the defendant orally

transmitted NDI classified at the TOP SECRET level to Journalist 1 on 12 separate

occasions. During the same timeframe, the defendant orally transmitted NDI classified at the SECRET level to Journalist 1 on at least four occasions. The defendant knew the information was classified at the SECRET and TOP SECRET levels because the intelligence products from which he had learned the classified information had visible classification markings as to the classification level of the information, and the intelligence products accessed by the defendant were stored on secure, classified government information systems.

14.    In relation to one of the twelve times the defendant orally transmitted TOP SECRET NDI to Journalist 1, in or about mid-April to early May 2018, the defendant accessed an intelligence report unrelated to his job duties on multiple occasions, which contained NDI classified at the TOP SECRET//SCI level ("Intelligence Report 1").

15.    A week after the defendant accessed Intelligence Report 1 for the second time, the defendant received an April 27, 2018 Twitter Direct Message ("DM") from Journalist 1. Journalist 1 asked whether the defendant would be willing to speak with Journalist 2. The defendant stated that he was "down" to help Journalist 2 if it helped Journalist 1 "progress." During the same April 27, 2018 Twitter exchange, Journalist 1 indicated that a certain United States military official told Journalist 2 that the official was not aware of the subject matter discussed in Intelligence Report 1. The defendant characterized the official's denial as "weird" and commented on the source of information contained within Intelligence Report 1.

16.    Several days after the April 27, 2018 Twitter exchange, the defendant searched on a classified United States government computer system for terms related to the topics contained in Intelligence Report 1. A few hours after searching for terms

related to the topic of Intelligence Report 1, the defendant spoke by telephone with

Journalist 1 for seven minutes while located in the Eastern District of Virginia. Several

hours later, the defendant spoke by telephone with Journalist 2 for over half an hour

while located in the Eastern District of Virginia. Immediately after the call with

Journalist 2, Journalist 1 called the defendant, who was still located in the Eastern District

of Virginia. During at least one of the calls with Journalist 1 and Journalist 2, the

defendant orally passed TOP SECRET NDI derived from Intelligence Report 1.

Approximately half an hour after the defendant spoke with the two journalists, Journalist

1 published an article ("Article 1") which contained TOP SECRET NDI, orally

communicated by the defendant and derived from Intelligence Report 1 classified at the

TOP SECRET//SCI level.

    17.    Journalist 1 later Tweeted a link to Article 1. The defendant subsequently

re-Tweeted Journalist 1's Tweet of Article 1.

    18.    On at least 30 separate occasions in 2018, the defendant conducted

searches on classified government systems for information regarding the classified topics

he discussed with Journalists 1 and 2.

    19.    On multiple occasions in 2018 and 2019, the defendant conducted

searches on classified government systems because of specific requests for information

from Journalists 1 and 2. Some of these topics were outside the scope of the defendant's

responsibilities as a CT analyst.

    20.    Between mid-2018 and October 2019, on at least two separate occasions,

the defendant confirmed the accuracy of NDI classified at the SECRET and TOP

SECRET levels that someone else had previously provided to Journalist 1.

21.    On September 24, 2019, the defendant sent a text message to Journalist 2 asking her to call him.    During a subsequent call that same day, the defendant orally transmitted NDI classified at the SECRET level to Journalist 2.    The defendant knew the information was classified at the SECRET level because the intelligence products from which he had learned the classified information had visible classification markings as to the classification level of the information.

22.    Between March 1, 2018 and October 8, 2019, the defendant participated in at least 630 phone calls and exchanged at least 57 text messages with Journalist 1.

23.    Between May 1, 2018 and September 24, 2019, the defendant participated in at least 34 calls and exchanged at least 151 text messages with Journalist 2.    The defendant's communications with Journalist 2 related to topics Journalist 2 was researching for purposes of future news articles.

24.    Neither Journalist 1 nor Journalist 2 was authorized to receive classified NDI, and at all times during his communications with Journalist 1 and 2, the defendant knew that he was not authorized to transmit classified NDI to either Journalist 1 or Journalist 2.

25.    Between early 2018 and October 2019, the defendant communicated with an employee of an overseas CT consulting group ("Consultant 1") via social media.    On at least two occasions, the defendant transmitted classified NDI related to CT topics to Consultant 1, using a social media site's direct messaging feature.

26.    Consultant 1 was not authorized to receive classified NDI, and at all times during his communications with Consultant 1, the defendant knew that he was not authorized to transmit classified NDI to Consultant 1.

7

27.    Subject matter experts have reviewed the classified intelligence reporting, the contents of which the defendant transmitted to and/or verified for Journalists 1 and 2, and have concluded that it contains classified NDI.

28.    This statement of facts includes those facts necessary to support the plea agreement between the defendant and the United States.   It does not include each and every fact known to the defendant or to the United States, and it is not intended to be a full enumeration of all of the facts surrounding the defendant's case.

29.    The actions of the defendant, as recounted above, were in all respects knowing and deliberate, and were not committed by mistake, accident, or for any other innocent reason.

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney

Date: _Feb. 20, 2020_    By: _W. Neil Hammerstrom_
W. Neil Hammerstrom, Jr.
Danya E. Atiyeh
Assistant United States Attorneys

_Jennifer Kennedy Gellie_
Jennifer Kennedy Gellie
Trial Attorney
United States Department of Justice

After consulting with my attorneys and pursuant to the plea agreement entered into this day between the defendant, Henry Kyle Frese, and the United States, I hereby stipulate that the above Statement of Facts is true and accurate, and that had the matter proceeded to trial, the United States would have proved the same beyond a reasonable doubt.

Henry Kyle Frese
Defendant

I am the defendant, Henry Kyle Frese's, attorney.   I have carefully reviewed the above Statement of Facts with him.   To my knowledge, his decision to stipulate to these facts is an informed and voluntary one.

Danny C. Onorato
Counsel for the Defendant

Stuart A. Sears
Counsel for Defendant

9